Chief Judge Desmond.
Plaintiff husband was given a divorce judgment against his wife on a jury’s verdict of adultery, and the Appellate Division agreed. The question of law on this appeal: should the proof as to the wife’s guilt have been excluded from evidence because it was gotten by means of an illegal forcible entry into the wife’s home by the husband and several private investigators employed by him? Agreeing with the Trial Justice and the Appellate Division, we hold that the evidence was admissible.
Nowhere, as all admit, is there any constitutional, statutory or decisional authority for rejecting otherwise valid evidence on such a ground. Our State’s prohibitions against unreasonable search and seizures (N. Y. Const., art. I, § 12; Civil Rights Law, § 8) do not have that purpose or effect (People v. Defore, 242 N. Y. 13, 23 [1926]; People v. Richter’s Jewelers, 291 N. Y. 161, 168 [1943]). The rule was and is that “ Evidence is not excluded because the private litigant who offers it has gathered it by lawless force ” (People v. Defore, supra, p. 22). It was remarked in 1943 in People v. Richter’s Jewelers (supra, pp. 168, 169) and it is still the fact that successive Legislatures and constitutional revisers since Defore’s ease have always refused to act favorably on proposals to bar from evidence proofs so obtained. The Supreme Court’s decision of 1961 in Mapp v. Ohio (367 U. S. 643) applying the Fourth Amendment is of course not controlling here or even applicable since its impact is on governmental seizures only and not on evidence illegally gathered by private persons. However, the argument is presented that the Mapp holding makes it logical and just *43 that our court should announce a similar exclusionary rule as to evidence illegally gathered by private persons. The theory seems to run like this: before Mapp, the law of evidence in this State was the same as to all illegal searches whether governmental or not, that is, all evidence so produced was receivable. Now we are told that since evidence which is the fruit of illegal governmental incursions is banned, so, for uniformity’s sake, should proof of similar character be refused acceptance when procured by illegal searches and under nongovernmental auspices. The argument goes too far and proves too much. Even evidence captured by the police contrary to laws other than the Fourth Amendment may be accepted by the State courts (Schwartz v. Texas, 344 U. S. 199 [1952]; People v. Dinan, 11 N Y 2d 350 [1962], cert. den. 371 U. S. 877).
Fourth Amendment protections of privacy against unlawful searches and seizures have their origins in English law of the 17th Century and earlier (Lasson, History and Development of the Fourth Amendment [Johns Hopkins Press, 1937], passim; and see historical material in Boyd v. United States, 116 U. S. 616, 624-630 [1886]). Never were those protections applicable to searches and seizures by any persons other than government officers and agents. Searches by “ the government ” only are covered, that is, ‘ ‘ official acts and proceedings ’ ’ and “ invasions on the part of the government and its employees of the sanctity of a man’s home and the privacy of life ” (Boyd opinion, supra, pp. 623, 624, 630). The reasons for this limitation are not only historical but found in our Constitution itself and the Supreme Court has in several opinions mentioned the “ intimate relation ” between the Fourth and Fifth Amendments (Boyd opinion, supra, p. 633; Adams v. New York, 192 U. S. 585; Hale v. Henkel, 201 U. S. 43, 70 et seq.).
The definitive holding that the Fourth Amendment has nothing to do with nongovernmental intrusions is' in Burdeau v. McDowell (256 U. S. 465 [1921]) which has never been overruled in this respect. In Burdeati the court (p. 475) said flatly and finally that the Fourth Amendment’s “ origin and history clearly show that it was intended to be a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies ” (see, also, Gambino v. United States, 275 U. S. 310, 316 et seq. *44 [1927], and Silverman v. United States, 365 U. S. 505). Neither history, logic nor law gives any support for the idea that uniform treatment should be given to governmental and private searches, and to the evidence disclosed by such searches.
With the supposed analogy to Mapp (supra) eliminated, no reason remains for holding inadmissible the evidence here presented. The basic rule is that all competent, substantial, credible and relevant evidence is to be available to the courts. The interests of justice will not be promoted by the announcement by the courts of new exclusions, since the process of investigating the truth in courts of justice is an indispensable function of society and since “ judicial rules of evidence were never meant to be used as an indirect method of punishment ” of trespassers and other lawless intruders (8 Wigmore, Evidence [McNaughton rev.], § 2183; Commonwealth v. Dona, 2 Met. [43 Mass.] 329 [1841]). Any court is taking extreme measures when it refuses convincing evidence because of the way it was procured. Proof of guilt collected in raids by private detectives has been, pursuant to rules not heretofore questioned, the basis for thousands of divorce decrees in our State. And the New York Legislature, when it has found necessity for outlawing evidence because it was secured by particular unlawful means, has provided specific statutory prohibitions such as those against the use of proof gotten by illegal eavesdropping (CPLR 4506; Penal Law, § 738). Further dealings with the problem (absent controls imposed by the Federal or State Constitutions or supervening United States Supreme Court decisions) should be by the Legislature. The present state of the law is clear and plain. “We must hold it to be the law until those organs of government by which a change of public policy is normally effected, shall give notice to the courts that the change has come to pass ” (People v. Defore, 242 N. Y. 13, 25, supra).
For further clarity, it should be noted that the question we are discussing is not as to whether evidence invalidly gotten by governmental people may be used in a civil litigation (see Bloodgood v. Lynch, 293 N. Y. 308; Cleary v. Bolger, 371 U. S. 392) or whether evidence wrongfully obtained by private individuals may be used by the State in a criminal prosecution. The only question here is whether evidence gotten by persons *45 not in government service may be rejected in a civil litigation, in the absence of constitutional or statutory compulsion for such rejection.
The judgment should be affirmed, without costs.