MATTER OF WONG

In Deportation Proceedings

A-15999391

*Decided by Board December 15, 1971*

(1) A motion to suppress evidence as illegally obtained must be supported by specific and detailed statements based on personal knowledge and must set forth a prima facie case of illegality, enumerating the evidence alleged to have been illegally obtained. [Cf. *Matter of Tang*, Interim Decision No. 2080]

(2) Where alienage has been established in deportation proceedings by evidence in possession of the Service before the alien's arrest, the burden is upon the alien under section 291 of the Immigration and Nationality Act to establish the nature of his entry or be presumed to be in the United States in violation of law.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant crewman—remained longer.

ON BEHALF OF RESPONDENT:
Peter Zimmerman, Esquire
100 State Street
Boston, Massachusetts 02109

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

Respondent appeals from the special inquiry officer's order requiring his deportation. The appeal will be dismissed; voluntary departure will be granted.

The Service claims respondent was admitted as a nonimmigrant crewman on or about July 7, 1968, that he was authorized to remain for not longer than 29 days, and that he remained without authority. Respondent refused to testify on the claim of privilege, although he admitted that he had not received permission to stay in the United States (pp. 9–10).

The special inquiry officer found the charge supported primarily on the basis of the information contained in a crewman's landing permit which shows the admission of Ka Wong, a native and national of China on July 7, 1968 at New York City (Ex. 4). The

special inquiry officer found, in light of respondent's refusal to admit or deny the permit related to him or to give any testimony concerning the manner of his entry, that the permit was clear, unequivocal and convincing evidence that respondent was deportable as charged. A Hong Kong Identity Card and a Hong Kong Seaman's Identification Book were also introduced in evidence. They bear photographs which the special inquiry officer stated were a good likeness of respondent. These documents show that the person to whom they were issued is a Chinese national (pp. 7–9). The special inquiry officer held they were cumulative evidence of respondent's alienage and deportability (p. 3, special inquiry officer's opinion).

Counsel contends the permit was improperly admitted in evidence because it, as well as the other documents, was taken from respondent after an illegal arrest, search and seizure. This claim of illegality is the subject of a motion submitted to the special inquiry officer to suppress evidence and of verbal objections to the admission of Service evidence.

The motion to suppress requests that all admissions by respondent and "all property taken on or about January 19, 1971" from respondent by Service officers be suppressed. The grounds for the motion are that the property was taken without warrant and without legal justification because there was no probable cause "for believing the existence of the grounds on which the arrest was made" and because respondent was not advised of his constitutional rights. The motion consists of hearsay statements by counsel. The statements are general and conclusory. The property taken is not specified. The Service officers are not named. It is not sworn and is unsupported.[1]

On appeal, counsel contends that the special inquiry officer should have held a hearing to determine the validity of the motion to suppress. He contends that the unsupported motion casts upon the Service the burden of establishing that its evidence is free of taint. Counsel has submitted a memorandum of law in support of the motion.

We dismissed a similar contention in *Matter of Tang*, Interim Decision No. 2080 (BIA, 1971). We held there that the Service is not called upon to justify the manner in which it obtained its evi-

---

[1] We do not mean to indicate that the issue can be raised only by the sworn statement of the respondent. See *Jackson* v. *United States*, 351 F.2d 821 (D.C. Cir., 1965). See also *Simmons* v. *United States*, 390 U.S. 377, 393 (1968) (defendant's testimony in support of motion to suppress not usable against him at trial on issue of guilt).

821

dence unless a respondent presented some competent evidence in support of his claim that tainted evidence had been used against him. After carefully considering counsel's contention, we find no reason to change our position. The cases hold that a mere demand for a suppression hearing is not enough to cause one to be held. Statements in a motion for suppression must be specific and detailed. They should not be general, conclusory or based on conjecture. They must be based on personal knowledge. The must set forth a prima facie case. The articles to be suppressed must be enumerated, *Nardone* v. *United States,* 308 U.S. 338 (1939); *United States* v. *Allison,* 414 F.2d 407 (9 Cir., 1969); *United States* v. *Gillette,* 383 F.2d 843, 848–849 (2 Cir., 1967 ; *Cohen* v. *United States,* 378 F.2d 751, 760 (9 Cir., 1967), cert. denied 389 U.S. 897; *Hardin* v. *United States,* 324 F.2d 553 (5 Cir., 1963) ; *O'Neal* v. *United States,* 222 F.2d 411 (D.C. Cir., 1955); *Wilson* v. *United States,* 218 F.2d 754 (10 Cir., 1955); *United States* v. *Goble,* 218 F.2d 754 (S.D. N.Y., 1930); *United States* v. *Roth,* 285 F. Supp. 364, 366 (S.D. N.Y., 1968) ; *United States* v. *Halsey,* 257 F. Supp. 1002, 1005 (S.D. N.Y., 1966); *United States* v. *Stonehill,* 254 F. Supp. 1003 (S.D. N.Y. 1966); *United States* v. *Casanova,* 213 F. Supp. 654 (S.D. N.Y., 1963). Here, the motion to suppress falls far short of meeting the requirements we have set forth.

Counsel cites *State* v. *Elkins,* 422 P.2d 250 (Ore., 1966). The case is inapposite. It deals with the burden of proof *at a hearing* on a motion to suppress. There was no discussion of what constitutes a proper motion—the issue before us.

To limit the issues, we shall rely upon evidence which was in the Service's possession before respondent was arrested—the identity card and identification book. We shall also rely on respondent's admission at the deportation proceeding that he does not have permission to remain in the United States. The documents are in the nature of passports. They must be surrendered to the custody of the master of the vessel before the crewman can be given landing privileges. The master must submit these documents to the Service when a seaman has failed to comply with the conditions of his admission. Such documents are competent evidence in deportation proceedings to establish alienage and deportability. These documents establish respondent is an alien (*Matter of Cheung,* Interim Decision No. 2106, A15 171 770 (BIA, November 30, 1971)).

Since alienage is established, the burden is upon respondent to establish the nature of his entry or be presumed to be in the

United States unlawfully (section 291 of the Act, 8 U.S.C. 1361).[2] He has failed to carry his burden. Moreover, he has, in fact, admitted that he does not have permission to remain in the United States. Deportability is established (*Ah Chiu Pang* v. *INS*, 368 F.2d 637 (3 Cir., 1966), cert. denied 386 U.S. 1037; *Ex parte Andal*, 118 F. Supp. 949 (S.D. N.Y., 1953), aff'd sub nom. *U.S. ex rel. Panes* v. *Shaughnessy*, 210 F.2d 472 (2 Cir., 1954)).[3]

The special inquiry officer denied voluntary departure. After careful examination of the record, we conclude that a brief period within which to depart voluntarily is permissible. We shall grant respondent 30 days to depart voluntarily.

**ORDER:** The outstanding order of deportation is withdrawn and the alien is permitted to depart from the United States voluntarily without expense to the Government, to any country of his choice, within such period of time, in any event not less than 30 days, and under such conditions as the officer-in-charge of the District deems appropriate.

*Further order:* If the alien does not depart from the United States in accordance with the foregoing, the order of deportation is reinstated and shall be executed.

---

[2] We have no authority to consider counsel's contention that section 291 of the Act is unconstitutional (*Matter of L—*, 4 I. & N. Dec. 556 (BIA, 1951)).

[3] We have not made use of the landing permit. We have taken no unfavorable inference from respondent's claim of privilege, nor from his failure to testify concerning the relation of the landing permit to himself. (The special inquiry officer honored respondent's claim of privilege. It was, therefore, error for the special inquiry officer to draw an unfavorable inference from respondent's refusal to testify concerning the relation of the landing permit to himself. See *Valeros* v. *INS*, 387 F.2d 921 (7 Cir., 1967). This does not mean that under such circumstances, a special inquiry officer cannot take cognizance of the fact that the Service's evidence is not contradicted.)